**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZAHEER BAKSHI,<br><br>          Plaintiff,<br><br>v.<br><br>BERGEN COUNTY SUPERIOR COURT,<br><br>          Defendants. | Civil Action No.: 15-3560 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

    This action arises out of an allegation by Pro-Se Plaintiff Zaheer Bakshi ("Mr. Bakshi") that New Jersey Superior Court – Bergen Vicinage ("Bergen Vicinage") failed to provide Plaintiff with accommodations under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* Presently before the Court are cross-motions for summary judgment filed by Bergen Vicinage (ECF No. 35) and by Mr. Bakshi (ECF No. 40) pursuant to Federal Rule of Civil Procedure 56.[1] The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Bergen Vicinage's motion and denies Mr. Bakshi's cross-motion.

## FACTUAL BACKGROUND[2]

---

[1] Mr. Bakshi does not formally move in accordance with the local civil rules, but states in his opposition brief that he is "also submitting a Motion for Summary Judgment under Fed R. Civ. P. 56(c) against the Defendant." (ECF No. 40 ("Bakshi Br.") at 3. For ease of reference, the Court refers to the page numbers generated by ECF for Mr. Bakshi's submission.) Given Mr. Bakshi's pro-se status, the Court construes this as a cross-motion, and notes that Bergen Vicinage does as well. (*See* ECF No. 43 ("BV Reply Br.").)

[2] Where possible, these background facts are taken from the parties' statements of material facts, pursuant to Local

Mr. Bakshi filed a complaint against the Village of Ridgewood Water ("Ridgewood Water") in September 2013 in Bergen Vicinage. (Bakshi Br. at 5, ¶ 3.) Mr. Bakshi states that "[f]or one year no CART [Communication Access Realtime Translation] or remote access was ever provided." (*Id.*) (However, Mr. Bakshi also states that "[w]hen the CART was provided it was an 8 inch CART which made reading the fast scrolling words totally impossible." (*Id.* at 4.)) The timing of Mr. Bakshi's allegations are unclear, but he asserts that at some point prior to July 2014, Plaintiff's complaint was dismissed without prejudice by Senior Judge Rosa. (*Id.*) Bergen

---

Civil Rule 56.1. (ECF No. 35-2, Defendant's Rule 56.1 Statement of Facts ("BV. SMF"); Bakshi Br. at 2-9.) The Court notes that Mr. Bakshi did not fully comport with the requirements of Local Civil Rule 56.1, which states as follows:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. . . . The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion. In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs *citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition*. The movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers. Each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law.

L.Civ.R. 56.1(a). Although Mr. Bakshi generally addresses the allegations made by Bergen Vicinage, he does not cite to any affidavits or other documents in denying Bergen Vicinage's allegations; indeed, he did not file any supporting affidavits or other documents in connection with his submission at all. The Court will deem any statement of fact which was not denied by Plaintiff with a citation to the record, and for which it finds support in the record, as undisputed for purposes of this motion. *See McCann v. Unum Provident*, 921 F. Supp. 2d 353, 359 (D.N.J. 2013) ("[F]ailure to reference evidence of record demonstrates that there is no reason to disbelieve the statements of fact contained in the Paragraphs at Issue. The Court will thus deem the facts recited in the Paragraphs at Issue to be undisputed . . . .") (internal citation omitted); *Maultsby v. Rih Acquisitions NJ, LLC*, 2011 U.S. Dist. LEXIS 148267, at *1 n.1 (D.N.J. Dec. 27, 2011) ("For those statements of facts for which plaintiff did not properly deny with a citation to the record, and for which the Court finds supported in the record, the Court deems them admitted."). At the same time, however, the Court will construe Mr. Bakshi's pro-se submission liberally and construe supported factual allegations not denied by Defendants as true. Finally, the Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

Vicinage does not discuss this timeframe in their submissions.

Plaintiff filed a new complaint against Ridgewood Water on July 1, 2014—*Zaheer Bakshi v. Village of Ridgewood Water*, BER-DC-11930-14—which was assigned to the Honorable Susan J. Steele, J.S.C. ("Judge Steele") in the Special Civil Part of Bergen County Superior Court.  (BV SMF ¶ 2; Bakshi Br. at 6 ¶ 4.)

A proof hearing was scheduled to take place approximately two months after the Complaint was refiled, on September 11, 2014, before Judge Steele.  (Bakshi Br. at 6, ¶ 4; *see also* ECF No. 35-3, Affidavit of Laura A. Simoldoni ("Simoldoni Aff."), Ex A.)  Mr. Bakshi states that because no CART accommodation was arranged for him for this hearing, he was "forced to cancel" the September 11, 2014 hearing.  (Bakshi Br. at 6, ¶ 5.)

The proof hearing was rescheduled for September 25, 2014 before Judge Steele.  (BV SMF ¶ 3; Simoldoni Aff., Ex. A; Bakshi Br. at 6, ¶ 6.)  On the day of the hearing, at or around 12:41 PM, Mr. Bakshi sent a facsimile to Judge Steele's chambers unilaterally cancelling the proof hearing.  The facsimile stated in part as follows:

> Due to another 12th hour changes [sic] I am cancelling my appearance for today.  At 6 PM, yesterday ,I [sic] was told that the proof hearing will go on as scheduled for today and that the Motion to reconsider dismissal which Judge Rosa has already denied will be heard on 10/10 without my physical presence, and that I was also granted the courtesy of a phone conference, saving me the trouble of making a 1000 mile round trip drive from the Canadian border with my disabilities and leaving my farm and my patients stranded.
>
> I was scheduled to leave yesterday and stay overnight in a hotel, but due to the last minute changes I had to set out in the morning and got stuck in traffic.  I called the court to inform that I might be delayed and that is when your law clerk informed that even the Motion to reconsider will be heard today.  Sorry, I did not come prepared for that nonsensical Motion to be heard orally. . . .

3

> I will be prepared to answer orally by phone on 10/10 as it was agreed. . . .
>
> I am copying this to the Defendant , [sic] and he should not show up. If he feigns innocence that he did not get my communications as he has done before and still comes to court and engages in ex parte communications as he has done throughout then it will be an egregious violation of the law.

(*See* Simoldoni Aff., Ex. B.) Mr. Bakshi claims that he sent the facsimile "due to lack of CART coupled with a surprised new hearing for which I was not prepared." (Bakshi Br. at 6, ¶ 6.) Mr. Bakshi claims that "the court adjourned [the September 25 hearing] due to absence of CART." (Bakshi Br. at 7, ¶ 7.)

On September 26, 2014, Judge Steele sent a letter to Mr. Bakshi, via regular mail, certified mail, and facsimile. (BV SMF ¶ 6-8; Simoldoni Aff., Ex. C; Bakshi Br. at 6, ¶ 7.) Judge Steele wrote that the September 25, 2014 had been scheduled, and then adjourned, at Mr. Bakshi's request, and that the matters had been rescheduled for an in-person conference on October 10, 2014, for which a CART accommodation would be provided. (Simoldoni Aff., Ex. C.) In part, Judge Steele wrote that

> [i]t must be clarified the Proof Hearing scheduled for September 25, 2014 was scheduled at your insistence even though defendant had requested an adjournment due to its pending Motion for Reconsideration. You will recall, you had contacted Chambers to advise you had already incurred significant expense reserving a hotel, etc. in anticipation of the hearing. Thus, the court continued the Proof Hearing on yesterday's schedule. It was only upon your repeated calls to chambers, along with your letter faxed to Chambers at 12:51 p.m. from a Holiday Inn Express that the hearing was adjourned at your request.
>
> Be advised both that the Motion for Reconsideration and the Proof Hearing have been scheduled for October 10, 2014 at 11:30 a.m. in person. It has come to my attention you requested a CART ADA accommodation. I have been advised by our court personnel such

> facility shall be here that day to accommodate you, however you must be here in person.
>
> Further, in view of the nature and content of your repeated telephonic and faxed communications to Chambers, any further communication shall be by either regular mail, messenger or facsimile only.

(Simoldoni Aff., Ex. C.)  It is unclear when Mr. Bakshi received Judge Steele's September 26, 2014 letter—he first states that he received it on October 8, 2014 (Bakshi Br. at 7, ¶ 8), but then states that he received it on October 10, 2014 (*id.*), and in two separate facsimiles stated that he received it "after" October 10, 2014 (*see* Simoldoni Aff., Exs. F, H.)  Ultimately, Plaintiff failed to appear for the October 10, 2014 hearing.  (*Id.*; BV SMF ¶ 9.)

On November 18, 2014, at Judge Steele's request, Trial Court Administrator Laura Simoldoni ("TCA Simoldoni") sent a letter to Mr. Bakshi, via regular mail, certified mail, UPS overnight mail, and facsimile to both addresses in Plaintiff's file at the Bergen County Superior Court.  (BV SMF ¶ 10-12; Simoldoni Aff., Ex. D.)  The letter indicated that TCA Simoldoni was attempting to accommodate Plaintiff's request to appear before Judge Steele by video for his next scheduled appearance of December 1, 2014.  (*Id.*)  TCA Simoldoni stated in the letter that she needed Plaintiff to provide his email address and telephone number in order for the Information Technology (IT) office at the Administrative Office of the Courts to send email installation and set-up instructions to the Plaintiff.  (*Id.*)  As stated in the letter, TCA Simoldoni also attempted to contact Plaintiff via telephone to expedite Plaintiff's requested accommodation.  (*Id.*)

TCA Simoldoni states that she received confirmation that the copy of the November 18, 2014 correspondence sent via UPS overnight was received and signed for on November 19, 2014. (BV SMF ¶ 13; Simoldoni Aff., Ex. E.)  Mr. Bakshi denies that he received the letter on November

5

19, 2014, and claims that he received the letter via USPS November 25, 2014, at which point it was "untimely." (Bakshi Br. at 9, ¶ 10; *see also* Simoldoni Aff., Exs. D, H.) Mr. Bakshi states he "made it clear to the Defendant and all concerned parties, that I will take a vacation break for thanksgiving and I need all the remote control set up instructions prior to mid November . . . ." (Bakshi Br. at 8, ¶ 9.)

Prior to his alleged receipt of the November 18th letter on November 25, 2014, Mr. Bakshi sent a facsimile on November 20, 2014 to an employee of TCA Simoldoni, Mr. Sylvia, in which he instructed Mr. Sylvia to "[h]ave them arrange for a phone conference only for the proof hearing for 12/1." (BV SMF ¶¶ 14-17; Simoldoni Aff., Ex. F.) In the fax, Mr. Bakshi further informed Mr. Sylvia that he wanted all mail sent from Bergen Vicinage to be sent to his New York address at P.O. Box 60, DeKalb Junction—the address used by Bergen Vicinage for all previous correspondences mentioned here—and he stated generally that "[t]he specific CART that I need has not been provided either." (*Id.*)

On November 21, 2014, TCA Simoldoni responded to Mr. Bakshi via regular mail, certified mail, UPS overnight mail, and facsimile, and also attempted to call the three telephone numbers provided by Mr. Bakshi. (BV SMF ¶¶ 18-23; Simoldoni Aff., Ex. G.) TCA Simoldoni informed Plaintiff once again that Judge Steele would accommodate Plaintiff's request and permit him to appear by video for the upcoming December 1, 2014 court appearance, but that he still needed to provide his email address and phone number. (*Id.*)

On November 25, 2014, via facsimile, Mr. Bakshi advised that he filed an interlocutory appeal to reinstate the third Proof Hearing (that had been scheduled for October 10, 2014), and that he would not proceed with the hearing scheduled for December 1, 2014 until after the appellate

division ruled on his appeal.  (BV SMF ¶¶ 24, 26, 27; Simoldoni Aff., Ex. H; Bakshi Br. at 8, ¶ 11.)  Specifically, Mr. Bakshi wrote in part as follows: "Once the Appellate court reaches the decision to grant me the Proof hearing, only then would I be able to proceed with the phone or video conference.  Until then, please standby with all the technical stuff."  (Simoldoni Aff., Ex. H.)  Additionally, Mr. Bakshi reiterated that he had not received Judge Steele's September 26, 2014 letter scheduling the Proof Hearing for October 10, 2014 until "after" that date, and he also stated that he did not receive TCA Simoldoni's November 18, 2014 letter (in which she had stated that Mr. Bakshi could appear via video for the December 1 hearing) until November 25, 2014. (*Id.*)

On December 1, 2014, Plaintiff's Complaint in the Ridgewood Water matter was dismissed.  (BV SMF ¶ 28.)

On December 6, 2014, Mr. Bakshi sent a facsimile to TCA Simoldoni stating that he would inform the Department of Justice that the defense attorney utilized the Bergen County Superior Court's offer of American Disability Act ("ADA") accommodations and Plaintiff's "refusal" of the accommodations as the reason to dismiss the Ridgewood Water Complaint.  (BV SMF ¶ 29; Simoldoni Aff., Ex. I.)  On December 8, 2014, TCA Simoldoni advised Mr. Bakshi that he may wish to consult an attorney to obtain legal advice regarding the outcome of his case.  (BV SMF ¶¶ 30, 31; Simoldoni Aff., Ex. J.)

\*     \*     \*

On September 11, 2015, after Mr. Bakshi improperly sent emails to the New Jersey Supreme Court Emergent Matter mailbox, John Italiano, Title II ADA Coordinator for the New Jersey Judiciary, sent a letter to Plaintiff advising that his complaint filed with the Judiciary EEO

office was investigated, but found to be without merit.  (BV SMF ¶¶ 32-35; ECF No. 35-4, Affidavit of John R. Italiano ("Italiano Aff."), Ex. A.)  Mr. Italiano stated that

> [i]n an effort to reasonably accommodate you, consistent with the ADA, you were offered an opportunity to appear for your court hearing via Skype.  You were asked to provide your email address and phone number in letters dated November 18, 2014 and November 21, 2014 from the Trial Court Administrator of Bergen County Superior Court.  You declined to provide your email address and phone number and the case was dismissed.

(*Id.*)  Mr. Bakshi was also informed by Mr. Italiano that he had the right to file a court user accommodation appeal with the Assignment Judge of the Bergen County Superior Court or with the Administrative Director of the Courts if he felt that his ADA rights had been violated.  (*Id.*)

On September 24, 2015, Mr. Bakshi responded to Mr. Italiano via two separate emails, elaborating on his claim that his ADA rights had been violated and requesting the appropriate email address for the New Jersey Supreme Court.  (BV SMF ¶ 36; Italiano Aff., Exs. B, C.)  Mr. Bakshi now states he "do[es] not wish to debate what Mr. Italiano thinks since he is Ms. Simoldini's twin brother when it comes to making up stories.  I repeatedly tried to reach this individual, and every time his secretary gave the excuse of a meeting."  (Bakshi Br. at 9, ¶ 13.)

Also on September 24, 2015, Mr. Bakshi sent a facsimile to TCA Simoldoni requesting that he be informed of the status of his purported "court user accommodation appeal" filed with the Trial Court Administrator's Office.  (BV SMF ¶ 37; Simoldoni Aff., Ex. K.)  On September 25, 2015, TCA Simoldoni responded via regular mail, certified mail, and UPS Overnight that Mr. Bakshi had not filed an ADA appeal with the Bergen County Trial Court Administrator's Office.  (BV SMF ¶¶ 38, 39; Simoldoni Aff., Ex. L.)  Again, Mr. Bakshi was reminded that he did not provide TCA Simoldoni with his email address or phone number to facilitate the proposed video

8

court appearance for December 1, 2014. (*Id.*)

Mr. Bakshi contacted Mr. Italiano on September 28, 2015 and September 29, 2015 whereby he stated that his ADA appeal was denied by the Appellate Court and requested that a letter be forwarded to Mark Neary, Clerk to the New Jersey Supreme Court. (BV SMF ¶¶ 40, 41; Italiano Aff., Exs. D, E, F.)

*     *     *

In his statement of facts, Mr. Bakshi rhetorically asks, "Where is the affidavit of Dr. Marlow?" (Bakshi Br. at 9, ¶ 14.)  Yolande P. Marlow is apparently affiliated with the Supreme Court Committee on Minority Concerns.[3]  In the Complaint, Mr. Bakshi states that he contacted Dr. Marlow after becoming "[f]ed up with the continued denial of my ADA and Due process rights . . . ." (ECF No. 1 ("Compl.") at 6.)  Mr. Bakshi claims that Dr. Marlow "was quite frankly shocked at the level of hostility generated against me by this Court in denying me my ADA rights.  She personally sen[t] a letter to Ms. Simoldini, trial court administrator and to Mr. Silvia, Affirmative Action Officer of this Court to comply with my ADA rights." (*Id.*)  Mr. Bakshi also referenced Dr. Marlow's purported letter in a September 16, 2015 letter he sent to the Court, stating that Dr. Marlow "did a thorough investigation and ruled in my favor that the dismissal was unconstitutional and I was indeed denied my due process and ADA rights." (ECF No. 8.)

Mr. Bakshi claims the letter from Dr. Marlow was the sole impetus for the offer of remote access contained in the November 18, 2014 letter from TCA Simoldoni. (Compl. at 6.)

> Ms. Simoldini panics due to the Oversight Committee's investigation. . . . After clamoring for my ADA rights for phone or video conferencing for 5 months, Ms. Simoldini springs into action and shoots me a 12th hour letter, which I did not receive by 11/24,

---

[3] *See* Supreme Court Committee on Minority Concerns, http://www.judiciary.state.nj.us/ccr/minority.html (last visited Apr. 1, 2016.)

9

a deadline I had set before I would leave for a thanksgiving reunion
with my family.

(*Id.*; *see also* ECF No. 21, Nov. 20, 2015 Letter at 2 (stating that Dr. Marlow "had to intervene to

force the Defendant to provide remote access. Dr. Marlow was removed from her job in retaliation

for defending my ADA rights.") Mr. Bakshi claims that "[b]ased upon this 12th hour notification

[*i.e.*, the letter dated November 18th that was allegedly not received until November 25th] my

complaint was dismissed with prejudice just as the Defendant was seeking. Every litigant by law

needs reasonable time to respond. Sending me an elaborate set up instructions for Skype at the

last minute is not reasonable time, it goes without saying." (Compl. at 8.)

The purported letter from Dr. Marlow is not in the record before the Court and Bergen

Vicinage does not mention Dr. Marlow in their submissions.

## PROCEDURAL BACKGROUND

Mr. Bakshi commenced this action on May 14, 2015 in the United States District Court for

the Northern District of New York with the filing of a complaint seeking injunctive relief[4] under

Title II of the ADA, and application to proceed *in forma pauperis*. (ECF No. 1 ("Compl.").)

---

[4] It is not entirely clear what relief Mr. Bakshi is seeking. In the prayer for relief, Mr. Bakshi seeks "injunctive relief to grant full and timely ADA accommodations, and restore my case to the calendar, including but not limited to remote access with timely and proper notifications, and to lift calling restrictions." (Compl. at 8.) However, in a letter dated September 16, 2015, Mr. Bakshi appears to also seek compensatory damages in the alternative: "I would like your honor to grant me the Judgment of $15,000, if not then please vacate dismissal and transfer my case to a more neutral venue, . . . or simply have the Defendant comply with ADA laws and grant a proof hearing with full due process rights." (ECF No. 8.) Additionally, in a letter dated November 12, 2015, Mr. Bakshi states that "[i]n lieu of a Motion for Summary Judgment, I am seeking damages for all the cynical manipulation of my ADA rights for 15 months which culminated in the dismissal of my complaint with prejudice . . . ." (ECF No. 21.) Finally, in his cross-motion, Mr. Bakshi references $20,000 in compensatory damages (which he cautions could "run into millions" if he has to get a psychologist report) and also asks the Court to "[t]ransfer [the] complaint to a more neutral venue to the Superior Court in Passaic County so I can continue on with my legitimate claim with Ridgewood Water." (Bakshi Br. at 9, 11.) Because the Court concludes that Mr. Bakshi has not set forth a prima facie case under the ADA, the Court need not discuss the appropriateness of the requested relief.

On May 26, 2015, United States Magistrate Judge Andrew T. Baxter transferred the matter to this Court, but explicitly declined to provide an opinion on the application to proceed *in forma pauperis* or on the merits of the claim.  (ECF No. 4.)  The matter was transferred to this Court and it was assigned to the undersigned on May 27, 2015.  (ECF No. 5.)

On August 24, 2015, the Court granted Mr. Bakshi's application to proceed *in forma pauperis* without analyzing the merits of the claim.  (ECF No. 7.)  On September 29, 2015, in response to Mr. Bakshi's September 16th letter, the Court issued an Amended Order, directing the U.S. Marshal to serve Mr. Bakshi's complaint on Bergen Vicinage.  (ECF No. 10.)  Bergen Vicinage was served on October 16, 2015.  (ECF No. 16.)

On November 5, 2015, Bergen Vicinage received the automatic extension of time to answer or reply under Local Civil Rule 6.1(b).  (ECF No. 17.)  On November 18, 2015, Bergen Vicinage filed a motion for extension of time to answer or reply (ECF No. 18), which was granted on November 20, 2015.  (ECF No. 19.)  Mr. Bakshi objected to the Court's granting the extension without permitting him an opportunity object (ECF No. 20), to which United States Magistrate Judge Joseph A. Dickson responded, explaining the standard for a motion for extension of time. (ECF No. 22.)  In a letter dated December 17, 2015, Mr. Bakshi responded to Judge Dickson's letter and stated that he would not accept electronic filings going forward.  (ECF No. 24.)

On December 21, 2015, Bergen Vicinage filed a second motion for extension of time to answer or reply.  (ECF No. 23.)

On January 12, 2016, Judge Dickson granted Bergen Vicinage's second motion for extension of time in part, and set a deadline of January 31, 2016 for Bergen Vicinage to answer or reply.  (ECF No. 27.)  After learning of this Order via telephone communication with the Court,

Mr. Bakshi filed objection dated January 12, 2016 and January 15, 2016.  (ECF Nos. 30, 31.)

In papers dated January 7, 2016, Mr. Bakshi filed a motion for entry of default judgment (ECF No. 28.)  In papers dated January 15, 2016, Mr. Bakshi filed another motion for default judgment.  (ECF No. 32.)  In light of Judge Dickson's January 12, 2016 Order giving Bergen Vicinage until January 31, 2016 to answer or reply to Mr. Bakshi's complaint, the undersigned denied Mr. Bakshi denied both of Mr. Bakshi's motions for default judgment as moot.  (ECF Nos. 29, 34.)[5]

On January 29, 2016, Bergen Vicinage filed a motion for summary judgment in lieu of an Answer.  (*See* ECF No. 35-5 ("BV Mov. Br.").)  In light of requests from Mr. Bakshi, the Court ultimately granted him until March 16, 2016 to oppose the motion (*see* ECF No. 37), and Mr. Bakshi timely filed his submission.  (ECF No. 40.)[6]  Bergen Vicinage filed a letter brief in opposition to Mr. Bakshi's cross-motion and in further support of its motion.  (ECF No. 43.)  Mr. Bakshi twice telephoned chambers *ex parte* to reiterate the arguments set forth in his submission. The matter is now ripe for adjudication.

## LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477

---

[5] The Court received an unintelligible letter from Mr. Bakshi on January 26, 2016. (ECF No. 33.)

[6] As noted *supra*, the Court construes Mr. Bakshi's submission as both a cross-motion for summary judgment and opposition to Bergen Vicinage's motion for summary judgment.

U.S. 242, 255 (1986). "To demonstrate that no issue is in dispute as to any material fact, the moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "To survive the motion, the non-moving party must show specific facts such that a reasonable jury could find in its favor." *McCabe*, 494 F.3d at 424 (citing Fed. R. Civ. P. 56(e)); *see also Celotex*, 477 U.S. at 322-23 (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *See Anderson*, 477 U.S. at 249-50.

Furthermore, "the Federal Rules of Civil Procedure expressly permit a defendant to move for summary judgment 'at any time,' Fed. R. Civ. P. 56(b), whether or not the parties have conducted discovery." *Koehnke v. City of McKeesport*, 350 F. App'x 720, 723 (3d Cir. 2009). If the non-movant believes that discovery is needed, Rule 56(d) specifies the procedure to be

13

followed: "[A] party seeking further discovery in response to a summary judgment motion [must] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (internal citations, quotations and brackets omitted). And although courts must liberally construe submission by pro-se litigants, "pro se litigants are nonetheless required to comply with the procedures outlined in Rule 56 of the Federal Rules of Civil Procedure." *Lynn v. Sec'y, Dep't of Def.*, 431 F. App'x 147, 150 (3d Cir. 2011) (citing *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992)).

### B. Title II of the ADA

Plaintiff seeks relief under the ADA. (*See* Compl.) Title II of the ADA prohibits discrimination against the disabled in public services, programs, and activities. *See Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Its core provision states: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a prima facie case, a plaintiff must show that he "'(1) has a disability; (2) was otherwise qualified to participate in a [public] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability.'" *Stone v. New Jersey Admin. Office of the Courts*, 557 F. App'x 151, 153-54 (3d Cir. 2014) (quoting *Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)).

The regulation implementing Title II states that a public entity shall "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from . . . [a] service that is

14

equal to that afforded others." 28 C.F.R. § 35.130(b)(ii). To that end, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, including applicants [and] participants . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).[7] In making the determination of what auxiliary aids and services to provide, public entities are required to consider various factors, such as context, complexity, and the communication methods of the individual. 28 C.F.R. § 35.160(b)(1)-(2). Although public entities are required to "give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary," 28 C.F.R. § 35.160(b)(2), public entities are not required to take any action that would result in a fundamental alteration or an undue burden. 28 C.F.R. § 35.164.[8]

To receive compensatory damages under the ADA, as opposed to merely equitable relief, a plaintiff must establish intentional discrimination. *See Williams v. Hayman*, 657 F. Supp. 2d 488, 503 (D.N.J. 2008) ("In general, courts have held that compensatory damages are available to plaintiffs asserting claims under Title II of the ADA, but only where it is shown that the discrimination was intentional.") (citation omitted). Intentional discrimination may be established with a showing of "deliberate indifference." *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). "To satisfy the deliberate indifference standard, [a plaintiff] must present evidence that shows both: (1) *knowledge* that a federally protected right is substantially likely to be violated . . . , and (2) *failure to act* despite that knowledge." *Id.* (citing *Duvall v. Cty. of Kitsap*, 260 F.3d

---

[7] The term "auxiliary aids and services" under the regulation implementing Title II includes "real-time computer-aided transcription services" as well as "voice, text, and video-based telecommunications products and systems." 28 C.F.R. § 35.104.

[8] Here, Bergen Vicinage does assert these defenses.

1124, 1139 (9th Cir. 2001)).  In *Duvall* the Ninth Circuit held that "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness."  *Id.*[9]

## ANALYSIS

Bergen Vicinage argues that it is entitled to summary judgment because Mr. Bakshi has not presented evidence sufficient to support a prima facie claim of Title II discrimination under the ADA.  First, Bergen Vicinage argues that Mr. Bakshi cannot prove that he is a qualified individual, with a disability, within the meaning of the ADA statute.  (Mov. Br. at 12.)  Second, even if Mr. Bakshi were able to show he was a qualified individual, with a disability, within the meaning of the ADA, Bergen Vicinage repeatedly attempted to accommodate him only to have their attempts rebuffed by Mr. Bakshi.  Thus, Bergen Vicinage contends that Mr. Bakshi cannot show that he was excluded from participation in, or was denied the benefits of the services, programs, or activities of the Bergen Vicinage or was otherwise discriminated against by the Bergen Vicinage.  (*Id.* at 13-14.)  Alternatively, Bergen Vicinage argues that Mr. Bakshi's claims should be dismissed under the *Rooker–Feldman* doctrine.  (*Id.* at 14-17.)

Mr. Bakshi argues that he has made a prima facie case under the ADA and that he was "steadfastly denied remote access."  (Bakshi Br. at 1.)  Mr. Bakshi disputes Bergen Vicinage's statement of facts (*see id.* at 2-9), and claims that Bergen Vicinage's motion was "submitted in bad faith, with un clean hands and with great deal of malice and forethought."  (*Id.* at 3.)[10]  Mr.

---

[9] "Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." *Id.*

[10] Mr. Bakshi further contends that Bergen Vicinage is committing fraud upon the Court by allegedly falsifying the affidavits which purport to show the delivery date of the November 18, 2014 correspondence. (*Id.* at 2, 8.)

Bakshi claims that he is a qualified individual, with a disability, within the meaning of the ADA, but does not provide evidence in support. (*Id.* at 12.) Further, Mr. Bakshi asserts that he was "definitely excluded from participating in several proof hearings as mentioned with documented evidence. . . . [Bergen Vicinage] never provided any accommodations let[] alone a reasonable one." (*Id.*) Mr. Bakshi contends that "[e]ven when the Defendant pretended to grant remote access under ADA accommodations it was done at the last minute and with the intention to harass. I need more than reasonable time to respond due to multiple disabilities I suffer from." (*Id.*)

The Court concludes that Bergen Vicinage is entitled to summary judgment because Mr. Bakshi has failed to establish the existence of elements essential to his case. First, the undisputed facts, even when viewed in a light most favorable to Mr. Bakshi, show that Bergen Vicinage attempted to accommodate Mr. Bakshi in order to provide him an opportunity to litigate his case. Second, Mr. Bakshi fails point to anything beyond his allegations in support of his claims that he is disabled within the meaning of the ADA and that he was not given an opportunity to participate in the court proceedings.

The undisputed facts before the Court show that Bergen Vicinage attempted to accommodate Mr. Bakshi by providing him an opportunity to participate in the litigation, but that he refused the offer. However, even under the ADA, Mr. Bakshi cannot unilaterally dictate the way that litigation in Bergen Vicinage proceeds.

As noted, the regulation implementing Title II states that a public entity shall "[a]fford a qualified individual with a disability an *opportunity to participate* in or benefit from . . . [a] service that is equal to that afforded others." 28 C.F.R. § 35.130(b)(ii) (emphasis added). To that end, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford

qualified individuals with disabilities, including applicants [and] participants . . . *an equal opportunity to participate* in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1) (emphasis added). In making the determination of what auxiliary aids and services to provide, public entities are required to consider various factors, such as context, complexity, and the communication methods of the individual. 28 C.F.R. § 35.160(b)(1)-(2)

After Mr. Bakshi unilaterally cancelled the September 25th hearing, Judge Steele wrote a letter to Mr. Bakshi dated September 26, 2014 in which she stated that the September 25, 2014 had been scheduled, and then adjourned, at Mr. Bakshi's request, and that the matters had been rescheduled for an in-person conference on October 10, 2014, for which a CART accommodation would be provided. (Simoldoni Aff., Ex. C.) After Plaintiff failed to appear for the October 10, 2014 hearing (*see* BV SMF ¶ 9), on November 18, 2014, TCA Simoldoni sent a letter to Mr. Bakshi, via regular mail, certified mail, UPS overnight mail, and facsimile to both addresses in Plaintiff's file at the Bergen County Superior Court, stating that she was attempting to accommodate Plaintiff's request to appear before Judge Steele by video for his next scheduled appearance of December 1, 2014. (BV SMF ¶ 10-12; Simoldoni Aff., Ex. D.) TCA Simoldoni stated in the letter that she needed Plaintiff to provide his email address and telephone number in order for the Information Technology (IT) office at the Administrative Office of the Courts to send email installation and set-up instructions to the Plaintiff. (*Id*.) As stated in the letter, TCA Simoldoni also attempted to contact Plaintiff via telephone to expedite Plaintiff's requested accommodation. (*Id*.)

There is evidence in the record suggesting that the copy of the November 18, 2014

18

correspondence sent via UPS overnight was received and signed for on November 19, 2014. (BV SMF ¶ 13; Simoldoni Aff., Ex. E.) Mr. Bakshi denies that he received the letter on November 19, 2014 and claims that he received the letter via USPS November 25, 2014, at which point it was "untimely" because he had "made it clear to the Defendant and all concerned parties, that I will take a vacation break for thanksgiving and I need all the remote control set up instructions prior to mid November . . . ." (Bakshi Br. at 8, ¶ 9.)

Prior to his alleged receipt of the November 18th letter on November 25, 2014, Mr. Bakshi sent a facsimile on November 20, 2014 to an employee of TCA Simoldoni, Mr. Sylvia, in which he instructed Mr. Sylvia to "[h]ave them arrange for a phone conference only for the proof hearing for 12/1." (BV SMF ¶¶ 14-17; Simoldoni Aff., Ex. F.) On November 21, 2014, TCA Simoldoni responded to Mr. Bakshi via regular mail, certified mail, UPS overnight mail, and facsimile, and also attempted to call the three telephone numbers provided by Mr. Bakshi, and once again informed Mr. Bakshi that Judge Steele would accommodate Plaintiff's request and permit him to appear by video for the upcoming December 1, 2014 court appearance, but that he still needed to provide his email address and phone number. (BV SMF ¶¶ 18-23; Simoldoni Aff., Ex. G.)

On November 25, 2014, via facsimile, Mr. Bakshi advised that he would not proceed with the hearing scheduled for December 1, 2014 until after the appellate division ruled on his appeal concerning the third proof hearing, but instructed Bergen Vicinage to "please standby with all the technical stuff." (BV SMF ¶¶ 24, 26, 27; Simoldoni Aff., Ex. H; Bakshi Br. at 8, ¶ 11.) Thereafter, Mr. Bakshi's complaint was dismissed and this litigation was initiated.

The undisputed facts show that Mr. Bakshi was given an opportunity to litigate his case— particularly when Bergen Vicinage attempted to set up remote access—but that Mr. Bakshi chose

not to accept the opportunity.  Although the ADA undoubtedly has a "sweeping purpose" and is of "comprehensive character," *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001), the statute does not permit a disabled plaintiff to unilaterally dictate the course of litigation, and, indeed, requires only in these circumstances that the public entity provide a disabled plaintiff an "opportunity" to litigate his case equal to that of other litigants.  *See* 28 C.F.R. § 35.130(b)(ii). The Court concludes that Mr. Bakshi was given this opportunity as required under the ADA, but that he chose not to accept it.

Furthermore, although Mr. Bakshi claims that he possesses documentary evidence to support the factual allegations of his claim, he relies only on unsupported allegations.  This is not enough to survive a motion to dismiss.  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)).  Stated differently, "'a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions.'"  *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985) (quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)).

Here, with respect to being a qualified individual with a disability (the first prong for stating a Title II claim under the ADA), Mr. Bakshi alleges in his Complaint that he

> suffer[s] from disabilities from my neck down to my shoulders to my hand. Carpal Tunnel Syndrome, etc.  It is difficult typing, driving, etc. . . . I am unable to endure long drives . . . and blew out much of my hearing. . . . I cannot function without a CART . . . in any court. . . . [I] suffer from vertigo and I get one while I am driving then I have to pull over. Etc, etc.

20

(Compl. at 1-2.)  However, in response to Bergen Vicinage's argument that Mr. Bakshi cannot establish that he is a qualified individual, with a disability, within the meaning of the ADA, Mr. Bakshi merely states as follows: "I am a qualified individual, I can send all my medical records, even though ADA laws prohibits me to provide any evidence." (Bakshi Br. 12.)  Notably, Mr. Bakshi provides no case law for the proposition that an ADA plaintiff is not required to establish disability at the motion for summary judgment stage.  In fact, the standard in the Third Circuit clearly states that a plaintiff "must prove that he . . . has a disability[.]"  *See Stone*, 557 F. App'x at 154 (quotation omitted); *see also In re Allegheny Health, Educ. & Research Found.*, 321 B.R. 776, 806 (Bankr. W.D. Pa. 2005) (granting judgment as a matter of law where party "fail[ed] to produce evidence that would be sufficient to carry her burden of proof at trial" with respect to establishing disability).

As for the third prong of a Title II ADA claim (that the plaintiff was denied the benefits of the program or was otherwise subject to discrimination because of his disability), Mr. Bakshi likewise fails to provide any evidence to support his allegations.  Most significant is his failure to produce evidence relating to the timeframe prior to that addressed by Bergen Vicinage.  For instance, Mr. Bakshi states that after he filed his complaint in September 2013, "[f]or one year no CART or remote access was ever provided," and that CART was not provided for the hearings scheduled for September 11 and 25, 2014.  (*See* Bakshi Br. at 5.)  However, he does not cite to (nor could the Court locate) any evidence in the record to support these claims beyond his unsupported allegations.[11]  Furthermore, the supposed letter from Dr. Marlow—a "crucial" piece of evidence in which Dr. Marlow purportedly "ruled in [Mr. Bakshi's] favor" and "validated" his

---

[11] The Court also notes that this allegation is inconsistent because Mr. Bakshi also states that "*[w]hen the CART was provided* it was an 8 inch CART which made reading the fast scrolling words totally impossible." (*Id.* at 4.)

claims of denial of ADA rights (Bakshi Br. at 3-4, 5)—is not included with Bakshi's submission. Similarly, Mr. Bakshi states that he has "recorded conversation" of Simoldoni's supervisor in which the supervisor purportedly "concludes" that the offer of remote access "was untimely" (*id.* at 5), but, again, Mr. Bakshi does not submit any evidence in support of this position. These sorts of unsupported allegations cannot pass muster on a motion for summary judgment. *See Colkitt*, 455 F.3d at 201.

Additionally, Mr. Bakshi's reliance on Judge Baxter's Order as "validating" his ADA claims is misplaced, as he severely misconstrues or miscomprehends the holding of Judge Baxter's Order. (*See* Bakshi Br. at 1, 4, 5, 7, 9, 11, 12, 13.)  Judge Baxter simply transferred the matter to this Court, on grounds that it was *feasible* that Mr. Bakshi had stated a claim sufficient to survive a motion to dismiss. (*See* ECF No. 4.)  Significantly, Judge Baxter explicitly stated that

> [t]he fact that the plaintiff in *Gregory* [*v. Admin. Office of the Courts of State of New Jersey*, 168 F. Supp. 2d 319 (D.N.J. 2001)] ultimately succeeded in his claim [on similar allegations] has no bearing on any subsequent analysis of [Mr. Bakshi's] complaint. . . . [T]his court makes no findings regarding either the merits of plaintiff's case or whether the requested relief is appropriate.  This court finds only that venue may not lie in the Northern District of New York.

(*Id.* at 5 n 7.)  Far from "validating" Mr. Bakshi's Complaint, Judge Baxter explicitly made no finding as to its merits.

The facts of *Gregory* are noteworthy.  There, the plaintiff was similarly a litigant in state court proceedings who sued under the ADA for failure to provide CART services.  *Gregory*, 168 F. Supp. at 324.  Given the procedural posture of the case—a motion to dismiss as opposed to a motion for summary judgment—the court was required to accept as true the factual allegation that the Superior Court affirmatively refused requests for accommodation.  *Id.*  In contrast, Mr. Bakshi,

confronted with a motion for summary judgment, has not provided evidence beyond his allegations that he was refused requests for accommodation. As noted, to survive a well-supported motion for summary "the non-moving party must show specific facts such that a reasonable jury could find in its favor." *McCabe*, 494 F.3d at 424 (citing Fed. R. Civ. P. 56(e))

*Soto v. City of Newark* is also of note. There, the plaintiffs sued the City of Newark after the Newark Municipal Court "repeatedly rejected" specific requests of plaintiffs for a sign-language interpreter at their wedding. 72 F. Supp. 2d 498, 491 (D.N.J. 1999). Accordingly, defendant's motion for summary judgment was denied because the undisputed facts of record clearly demonstrated that plaintiffs were denied the benefits of Municipal Court services. Again, here Mr. Bakshi's allegations are not supported by evidence, and the undisputed facts demonstrate that Bergen Vicinage attempted to accommodate him.

When viewing the facts in a light most favorable to Mr. Bakshi, he has failed to establish the he is disabled, or, more significantly, that he was denied equal opportunity to access the courts. *See Stone*, 557 F. App'x at 153-54. He therefore has failed to establish at least one of the "essential elements of [his] case on which [he] has the burden of proof at trial." *McCabe*, 494 F.3d at 424 (citation omitted). Mr. Bakshi has failed to submit evidence establishing his disability, or that his requests for accommodation were refused. In fact, the undisputed facts demonstrate that, consistent with their obligations under Title II, Bergen Vicinage afforded Mr. Bakshi the ability to litigate his case but that he refused. That Mr. Bakshi's case was ultimately dismissed as a result of his refusal to accept the accommodation is of no moment, because the ADA, although comprehensive, is not license for a disabled plaintiff to unilaterally dictate the way that litigation proceeds. Accordingly, the Court shall grant Bergen Vicinage's motion for summary judgment

23

and deny Mr. Bakshi's cross-motion.[12]

## **CONCLUSION**

For the reasons above, the Court grants Bergen Vicinage's motion and denies Mr. Bakshi's cross-motion.  An appropriate Order accompanies this Opinion.

DATED: May 9 , 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

---

[12] The Court declines to discuss the application of the *Rooker–Feldman* doctrine as moot.

24